THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CLUB 21 LLC dba SUGARS NIGHTCLUB, TALENTS WEST II LLC,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SHORELINE, TONY BURTT, SHORELINE CHIEF OF POLICE, and SCOTT PASSEY, SHORELINE CITY CLERK,<br><br>Defendants. | Case No. C08-0078 MJP<br><br>ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiffs' motions for summary judgment (Dkt. Nos. 49, 54) and Defendants' motions for summary judgment (Dkt. Nos. 52, 58). The Court has considered the motions, the responses (Dkt. Nos. 60, 63, 64, 65), the replies (Dkt. Nos. 61, 70, 72), all pertinent documents in the record, and the parties' presentations at oral argument. For the reasons set forth below, the Court DENIES Plaintiffs' motions and GRANTS Defendants' motions.

**Background**

Plaintiffs are two entities challenging various aspects of the City of Shoreline's Adult Cabaret Ordinance and Shoreline's enforcement of those provisions. (First Amended

ORDER ON STANDING MOTIONS - 1

Compl. at ¶ 3.1.)  Plaintiff Club 21 LLC ("Club 21") operates Sugars, a nightclub featuring "nude dancing and erotic entertainment" in the City of Shoreline.  (Id.)  Entertainers are independent contractors paid directly by customers to perform stage and individual performances.  (Id. ¶ 3.2.)  Defendant Tony Burtt was the Chief of Police of the City of Shoreline.  (Dkt. No. 52 at 1-2.)

The central aspect of Plaintiffs' complaint had been a Constitutional challenge to two provisions of the Adult Cabaret Ordinance.  First, Shoreline requires entertainers to perform non-stage dances at a minimum distance from customers.  The code provides:

> No employee or entertainer mingling with members of the public shall conduct any dance, performance or exhibition in or about the nonstage area of the adult cabaret unless that dance, performance or exhibition is performed at a distance of no less than four feet, measured from the forehead of the entertainer to the forehead of the customer paying for the dance, performance or exhibition.

SMC 5.10.070(A)(6) ('the four foot rule").  Second, under SMC 5.10.070(B)(8), managers are responsible for making sure that all entertainers comply with the four foot rule.  That section provides:

> The manager shall be responsible for and shall assure that the actions of members of the public, the adult entertainers and all other employees shall comply with all requirements of this chapter.

Plaintiff challenged these provisions as overbroad and vague because they permitted criminal penalties on the basis of strict liability.  (Dkt. No. 49 at 1.)   On April 13, 2009, just a few days before the Court heard oral argument in this matter, Shoreline adopted Ordinance 540 which provided a mens rea element for all violations of the Municipal Code.  (Dkt. No. 80 at 2.)  The parties agreed at oral argument that this Ordinance moots Plaintiffs' facial challenge.  (See Dkt. No. 49.)

In addition, Plaintiffs complained Defendants' enforcement of the Adult Cabaret Ordinance presented an unconstitutional prior restraint on free speech.  On September 22,

ORDER ON STANDING MOTIONS - 2

2006, undercover police officers observed violations of the four foot rule and the manager's liability provisions and arrested a number of dancers and managers. (Cobb Decl., Ex. A.) On December 28, 2007 and January 11, 2008, similar observations by undercover officers led to additional arrests. (Id., Ex. B, C.) Plaintiffs complain that these arrests were unnecessarily disruptive because Sugars was temporarily closed while officers completed the arrests. (Dkt. No. 54 at 3.)

Plaintiffs also challenged Shoreline's licensing provisions for entertainers and managers, but dismissed the claim because Shoreline amended those provisions. (Dkt. Nos. 51, 76.) In a previous ruling, the Court dismissed claims by Plaintiffs Ryan McLeod and Catrina Nyhaus for lack of standing. (Dkt. No. 79.)

**Discussion**

I.  Summary Judgment Standard

Summary judgment is not warranted if a material issue of fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). To discharge this

burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. Id. at 324.

II. Policy of Mass Arrests/Bad Faith Harassment

Plaintiff's motion argues that the City's decision to arrest violators of the four foot rule constitutes an unconstitutional prior restraint on free speech. (Dkt. No. 54.) They further assert that the police engaged in bad faith harassment by deciding to make physical arrests in lieu of issuing citations. (Id. at 10.) Defendant Tony Burtt moves for summary judgment on the same issue, arguing that the officers did not restrain speech by arresting violators of the four foot rule. (Dkt. No. 52 at 4.)

The parties agree that nonstage adult dancing is a form of expressive conduct "protected, to some degree, by the First Amendment." Colacurcio v. City of Kent, 163 F.3d 545, 549 (9th Cir. 1998). The Colacurcio court describes in some detail the "fragmented nature of Supreme Court opinions dealing with nude dancing." Id. (citing Young v. American Mini Theater, Inc., 427 U.S. 50 (1976) (four plurality Justices asserting that adult entertainment is "low value" speech), and Barnes v. Glen Theatre, Inc., 501 U.S. 560 (1991) (four-four split on whether nude dancing is entitled to only "marginal" First Amendment protection)). The Supreme Court has made plain that "a system of prior restraint 'avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system.'" Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 559 (1975) (quoting Freedman v. Maryland, 380 U.S. 51, 58 (1965)).

In Attwood v. Purcell, a district court found that an Arizona prior restraint statute lacked procedural safeguards because the police officers had to both (1) make the subjective determination that a dancer had engaged in "suggestive conduct" and (2) make

ORDER ON STANDING MOTIONS - 4

the arrest, thereby censoring that dancer. 402 F. Supp. 231, 236-37 (D. Ariz. 1975) (ordinance outlawed dancing around those who could be annoyed by nude dancing). In contrast, the court in <u>Alexis Inc. v. Pinellas County</u> ruled that, where sheriffs were constrained by the Fourth Amendment's probable cause standard, arrests made were not an unconstitutional prior restraint. 194 F. Supp. 2d 1336, 1347-48 (M.D. Fla. 2002). While the <u>Alexis</u> court found that arresting entertainers created a prior restraint "to the extent that some dance performances were lost," it concluded that the restraint was permissible because the violations were "readily identifiable and separable from otherwise protected activity." <u>Id.</u> at 1347.

As in <u>Alexis</u>, the arrests in this matter were made after the police had probable cause to believe the Adult Cabaret Ordinance had been violated. <u>Id.</u> During each of the three police operations, officers observed conduct ranging from actual touching to offers of prostitution. (<u>See</u> Cobb Decl., Exs. A, B, C.) Unlike the officers in <u>Attwood</u> who had to make subjective determinations, the officers in Shoreline only needed to observe whether entertainers were violating the four foot rule. 402 F. Supp. at 236-37. There is no dispute that violations were pervasive and easily distinguishable from protected activity.

Plaintiffs also complain that police conduct was inappropriate because Sugars was shut down temporarily while the police processed the arrests. (Dkt. No. 54 at 8.) First, there is no evidence in the record indicating the closures were longer than necessary to effectuate the arrests. It is difficult to imagine how the police could make its arrests without some disruption in business. (<u>See</u> Dkt. No. 52 at 3 (fifteen dancers were arrested on 09/22/2006; nineteen dancers were arrested on 01/11/2008).) Second, as in <u>Alexis</u>, Club 21 retained the right to "purvey such expressive material and make money . . . [by] continuing to offer dance performances by other dancers." 194 F. Supp. 2d at 1348.

ORDER ON STANDING MOTIONS - 5

Plaintiffs state they reopened Sugars after the compliance checks were complete. (Second Conte Decl. ¶ 4.) Plaintiffs cannot use the fact that "there were few . . . entertainers left to perform" after the offending entertainers were removed to support a claim that the police unfairly shut down the business. (Id.)

Bad faith harassment may occur if "[l]aw enforcement actions . . . go beyond that necessary to enforce the laws and are designed to chill First Amendment rights." Alexis, 194 F. Supp. 2d at 1348 (citations omitted). In P.A.B., Inc. v. Stack, police officers "initiated a crusade" by "flooding" the area around an adult bookstore and checking identifications of both patrons and employees. 440 F. Supp. 937, 940 (D.C. Fla. 1977) (employee recalled at least sixty instances where police asked for identification in a three month period). The P.A.B. court found that the police's "zone saturation" procedures created a "clear, continuous and pervasive pattern of harassment." Id. at 942.

In support of their claim of bad faith harassment, Plaintiff cites one criminal rule which permits arresting officers to issue citations in lieu of making custodial arrests for misdemeanors. (Dkt. No. 54 at 10-11.) Plaintiffs' argument that Defendants should have chosen to issue citations instead of making physical arrests does not substantiate a claim for bad faith harassment. Unlike the pervasive intrusions in P.A.B., the police officers here performed just a few operations to stop blatant violations of the Adult Cabaret Ordinance. Nothing in the record indicates that police officers took measures that were more intrusive than necessary. See Alexis, 194 F. Supp. 2d at 1348.

III. Lost Profits

Defendants have also moved for summary judgment on the issue of lost profits. (Dkt. No. 58.) Because the Court has determined that Defendants are not liable under § 1983, the Court need not reach the issue of damages. Plaintiffs are not entitled to damages.

**Conclusion**

Plaintiffs have failed to raise an issue of material fact on their claim that Shoreline's arrest procedures presented an unconstitutional prior restraint of free expression. Defendant is entitled to summary judgment. The Court orders as follows:

1. As the parties agreed at oral argument, Plaintiffs' motion for summary judgment on the issue of overbreadth and vagueness (Dkt. No. 49) is MOOT.

2. Plaintiffs' motion for summary judgment regarding Defendants' policy of mass arrests (Dkt. No. 54) is DENIED.

3. Defendant Burtt's motion for summary judgment (Dkt. No. 52) is GRANTED.

4. Defendants' motion for summary judgment on the issue of lost profits (Dkt. No. 58) is MOOT.

5. At oral argument, the parties agreed that if the Court granted Defendants' motions and denied Plaintiffs' motions, there would be no further issues remaining for trial. The parties stipulated motion to modify the scheduling Order in this matter is therefore MOOT. Judgment shall be entered in favor of Defendants.

It is SO ORDERED. The Court directs the Clerk to transmit a copy of this Order to all counsel of record.

Dated this 24th day of April, 2009.

Marsha J. Pechman
United States District Judge